

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| JOVAN TYLER, | ) | No. ED111751 |
| | ) | |
| Appellant, | ) | Appeal from the City of St. Louis |
| | ) | Circuit Court |
| | ) | |
| vs. | ) | Cause No. 1822-CC11510-01 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Joseph P. Whyte |
| | ) | |
| Respondent. | ) | FILED: May 21, 2024 |

## Opinion

Jovan Tyler (Appellant) appeals from the motion court's judgment denying his Rule 29.15[1] amended motion for post-conviction relief from his jury conviction on second-degree trafficking. In his sole point on appeal, Appellant argues the motion court clearly erred because Trial Counsel was ineffective in failing to investigate and call his brother (Brother) as a witness during his trial. Because Appellant did not show Trial Counsel performed ineffectively in his investigation or in employing a reasonable trial strategy in choosing not to call Brother to testify, the motion court did not clearly err in denying post-conviction relief. Accordingly, we affirm the motion court's judgment.

---

[1] All Rule references are to Mo. R. Civ. P. (2018).

## Background

*Appellant's Trial*

The State charged Appellant with four drug-related offenses arising out of the execution of a search warrant of his home on October 2, 2014.  Appellant was present during the search and confirmed that the bedroom being searched belonged to him.  Police found cocaine and marijuana in a dresser in Appellant's bedroom.  Law enforcement also located a scale, a lease for the home with Appellant's name on it, a utility bill in Appellant's name, and Appellant's son's social security card in the bedroom.  In the kitchen, police found cocaine and drug paraphernalia.  Police further found large denominations of cash in the home.

The case proceeded to trial.  Appellant's defense was that he did not know about or own the drugs that were recovered, which he claimed belonged to Brother.  Appellant did not testify.  The jury convicted Appellant on second-degree trafficking of cocaine and possession of marijuana under thirty-five grams.  The jury acquitted Appellant on possession with the intent to distribute and possession of drug paraphernalia with the intent to use.  The trial court sentenced Appellant as a prior and persistent offender to ten years in prison for second-degree trafficking and time served for misdemeanor possession.[2]  Appellant directly appealed from his convictions and sentences, which we affirmed in *State v. Tyler*, 553 S.W.3d 458 (2018) (per curiam).

*Post-Conviction Proceedings*

Appellant filed his pro se motion for post-conviction relief on October 25, 2018, in which he raised the same claim as raised on appeal regarding Trial Counsel's failure to investigate and call Brother.  The motion court appointed counsel, and a series of untimely amended motion filings and untimely motion court rulings followed.  Ultimately, following an abandonment

---

[2] Appellant's marijuana possession conviction has since been expunged pursuant to constitutional amendment.  *See* MO. CONST. art. XIV, § 2.

2

inquiry, the motion court treated the amended motion as timely filed and granted an evidentiary hearing.[3]

At the evidentiary hearing, Trial Counsel was shown a client questionnaire that he created to help familiarize himself with incarcerated clients. The questionnaire requests clients to describe any investigation they would like Trial Counsel to conduct and to name and provide contact information for potential witnesses. In Appellant's questionnaire, Appellant identified Brother, who he said had been incarcerated for the class C felony of possession of a controlled substance. In his questionnaire response, Appellant indicated Brother had served his sentence and was out of prison, and Appellant "need[ed] [Brother] to help [him]." Appellant provided Brother's name and telephone number, but did not include any further information pertaining to Brother in the questionnaire. Trial Counsel recalled that he had looked up Brother's case information and determined that Brother had been facing drug-possession charges in a case that had happened near or about the same location and close in time to the search that resulted in the charges against Appellant. Trial Counsel attested to his familiarity with locating incarcerated individuals and stated that he would not decline to call a witness just because that individual was incarcerated.

The motion court took judicial notice of Brother's criminal docket entries, which Trial Counsel reviewed and placed in Appellant's file case while preparing for Appellant's trial in December of 2016. Police officers testified at Appellant's trial that Brother had been arrested and charged with felony drug possession in September of 2014 at the same home that was the target of the October 2014 search warrant that resulted in Appellant's charges. Brother pleaded

---

[3] We note that this Court initially remanded the matter due to an insufficient evidentiary record, and the motion court held a new evidentiary hearing on April 5, 2023 at which Appellant and Trial Counsel testified. The motion court incorporated Brother's prior deposition testimony into the record.

guilty in February of 2015 and was sentenced to fifteen years in prison and placed on a suspended execution of sentence (SES). Brother's file did not show that Brother's attorney formally withdrew. Brother was placed on a three-year probation beginning May 2016 following completion of a long-term substance abuse treatment program, with execution of his fifteen-year prison sentence to remain suspended assuming Brother complied with the terms of probation.

Trial Counsel testified that he contacted Brother's attorney of record to ask him whether he could speak to Brother about Appellant's case, but he did not hear back. Trial Counsel stated that he believed ethical guidelines prevented him from speaking with someone who is represented by an attorney without that attorney's permission. Trial Counsel stated he did not reach out to Brother in the absence of approval by Brother's attorney because he "didn't have any good reason to believe that [Brother] would admit responsibility for the crimes and subject himself to significant punishment." Trial Counsel testified that his defense strategy was to place responsibility for the drugs found inside Appellant's home on Brother, which he discussed with Appellant prior to trial.

Appellant testified that he told Trial Counsel to contact Brother in his questionnaire. The motion court asked Appellant whether he ever spoke with Trial Counsel about contacting Brother other than the questionnaire, and Appellant could not remember. Appellant recalled speaking with Trial Counsel multiple times about blaming Brother for the drugs as a trial strategy. Appellant testified that he never spoke to Brother during the pendency of his case.

As part of the record of the evidentiary hearing, Brother testified via deposition while on work release from an out-of-state prison. Brother stated he would have testified at Appellant's trial if called. Brother testified that he had sometimes stayed with Appellant in 2014. Specifically, when asked if he ever stayed with Brother in 2014, he answered: "Yes, I have, but

4

no I haven't, at the same time." Brother explained he would hang out at Appellant's home when having domestic troubles with his wife, and he would usually sleep in Appellant's bedroom on a pile of clothes because the air conditioner was located there. Brother said he was arrested two weeks before Appellant was arrested but was released the same day and went to Appellant's home, where he was "welcome, any time." When asked how many times he visited Appellant's home between his arrest and Appellant's arrest, Brother initially could not estimate but later stated he was there "every day."

Brother admitted to using cocaine and marijuana during that time period due to his addiction, and he stated he had cocaine and heroin at Appellant's home. When shown the exhibits from Appellant's trial, Brother identified and claimed ownership of the marijuana and cocaine found in Appellant's bedroom dresser, the scale from Appellant's bedroom, and the cocaine from the kitchen. Brother said that Appellant did not see him place the drugs in the dresser or kitchen. He did not recall whether he spoke with Appellant's Trial Counsel. Brother believed that during 2016 he was confined in prison. Brother testified that had he been called by Appellant's attorney, he would have answered the same way he did in his deposition.

*Motion Court's Judgment*

The motion court denied Appellant's amended motion, finding Trial Counsel did not perform ineffectively. The motion court found Brother's deposition testimony was not credible and held that Appellant had not proven, by a preponderance of the evidence, that Brother would have testified as alleged. The motion court found Trial Counsel reasonably determined that Brother would not have testified that he committed the charged offenses. This appeal follows.

Standard of Review

We review a motion court's denial of post-conviction relief for whether the motion court's findings of fact and conclusions of law were clearly erroneous. Rule 29.15(k). "A

5

judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (internal quotation omitted). We presume the motion court's findings of fact are correct. *Id.* (internal citation omitted).

Discussion

In his Rule 29.15 amended motion, Appellant contends that Trial Counsel was ineffective for failing to call his Brother as a witness at trial. In this case, and under these facts, we hold that Trial Counsel did not perform ineffectively, as Appellant cannot satisfy the two-prong test for ineffectiveness set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, in order to prevail on a motion for post-conviction relief, the movant must satisfy both prongs of the standard for ineffective assistance of which are: (1) that trial counsel performed ineffectively by failing "to exercise the level of skill and diligence reasonably competent trial counsel would in a similar situation" and (2) that trial counsel's ineffective performance prejudiced the outcome of his trial. *Shockley*, 579 S.W.3d at 892 (quoting *Strickland*, 466 U.S. at 687). A movant must satisfy both prongs by a preponderance of the evidence, and if the movant fails to meet one prong then we need not consider the other. *Hendricks v. State*, 519 S.W.3d 510, 514 (Mo. App. E.D. 2017) (internal citation omitted).

Under the performance prong, a movant "must overcome the strong presumption trial counsel's conduct was reasonable and effective" by identifying "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Shockley*, 579 S.W.3d at 892 (internal quotations omitted). "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable[.]" *Id.* (quoting *Dorsey v. State*, 448 S.W.3d 276, 287

6

(Mo. banc 2014) (quoting *Strickland*, 466 U.S. at 690)).  Under the prejudice prong, a movant must show "there is a reasonable probability that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* (internal quotation omitted).

*Point I: Trial Counsel's failure to call Appellant's Brother as a witness*

Appellant's amended motion contends Trial Counsel was ineffective for failing to investigate and call Brother as a witness because Brother would have testified that the drugs attributed to Appellant actually belonged to him.  Appellant argued that Trial Counsel's failure to call Brother prejudiced him, because the evidence would have corroborated the defense theory that Appellant had no knowledge or ownership of the drugs and established a reasonable probability that the jury would have acquitted Appellant on all counts.  We disagree.

A "[m]ovant can prevail on a claim for ineffective assistance of counsel based on trial counsel's alleged failure to investigate only if he can demonstrate: (1) trial 'counsel's failure to investigate was unreasonable' and (2) [m]ovant 'was prejudiced as a result of [trial] counsel's unreasonable failure to investigate.'"  *Id.* at 897 (quoting *Barton v. State*, 432 S.W.3d 741, 759 (Mo. banc 2014)).  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Id.* (quoting *Collings v. State*, 543 S.W.3d 1, 16 (Mo. banc 2018) (quoting *Strickland*, 466 U.S. at 691)).  "Ordinarily the choice of witnesses is a matter of trial strategy and will support no claim of ineffective assistance of counsel."  *Id.* at 906 (quoting *Barton*, 432 S.W.3d at 750).  "This is because 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"  *Id.* (quoting *Barton*, 432 S.W.3d at 749).

To prove ineffective assistance for failure to call a witness, a movant must demonstrate: "(1) trial counsel knew or should have known of the existence of the witness; (2) the witness

could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Id.* (internal quotation omitted). "Counsel may choose to call or not call almost any type of witness or to introduce or not introduce any kind of evidence for strategic considerations." *Id.* at 908 (quoting *Vaca v. State*, 314 S.W.3d 331, 337 (Mo. banc 2010)). When considering the duty to investigate a potential witness, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Id.* at 907 (internal quotation omitted).

Under this record, we agree with the motion court that Trial Counsel did not perform ineffectively. After Appellant identified Brother as a potential witness who could help his case, Trial Counsel demonstrated due diligence by investigating the status of Brother's drug charges and attempting to contact Brother's attorney. *See id.* (internal quotation omitted). We must focus on what Trial Counsel knew at the time he conducted his investigation. *See Sanders v. State*, 738 S.W.2d 856, 858 (Mo. banc 1987) (quoting *Strickland*, 466 U.S. at 689 (noting we must attempt "to eliminate the distorting effects of hindsight" and instead "evaluate the conduct from [trial] counsel's perspective at the time")). Trial Counsel knew what Appellant told him— that he wanted Brother to help, not specifically that Brother allegedly would admit to committing all the crimes with which Appellant was charged. Through investigation, Trial Counsel determined that Brother had pleaded guilty to drug charges and that his file indicated he was represented by counsel, whom Trial Counsel contacted but received no response. Trial Counsel had multiple discussions with Appellant about the strategy of blaming Brother for the drugs recovered from Appellant's home.

In line with this theory of defense, Trial Counsel considered calling Brother to testify and decided against it for multiple reasons, including because he believed Brother was still

represented by counsel in his criminal case—which did not indicate the attorney's withdrawal—and, critically to the motion court's judgment, because he believed Brother was unlikely to admit responsibility and subject himself to possible prosecution for the offenses charged against Appellant. We find Trial Counsel's belief to be reasonable in light of the three-year statute of limitations for a felony which, had Brother confessed to Appellant's crimes, may have exposed Brother to additional charges. *See* § 556.036.2(1), RSMo (Cum. Supp. 2013); *Lowery v. State,* 650 S.W.2d 692, 694–95 (Mo. App. S.D. 1983) (finding trial counsel was not ineffective in choosing not to call a concurrently-represented co-defendant to testify because he believed the co-defendant would either invoke the Fifth Amendment[4] and refuse to testify or testify that the movant had fully participated in the offense).

In *Sanders*, the Supreme Court of Missouri observed that in *Lowery* and other similar cases, trial counsel "decided not to investigate potential witnesses based on ***unconfirmed beliefs*** that these particular witnesses would provide no information or testimony beneficial to their clients[,]" yet Missouri courts found trial counsel's strategic decisions were reasonable given the particular circumstances of each case. *Sanders*, 738 S.W.2d at 860 (emphasis added). In *Sanders*, trial counsel was found to have performed within the "bounds of prevailing professional norms" in declining to further investigate a witness with whom she spoke only briefly, whose own trial was still pending, and who she believed would not be permitted to testify by her attorney. *Id.* at 859–60.

The facts at bar are as compelling as the facts in *Lowery* or *Sanders*. *See id.*; *Lowery*, 650 S.W.2d at 694. Here, Trial Counsel attempted to contact Brother's attorney and Trial Counsel

---

[4] U.S. CONST. AMEND. 5; *see McFadden v. State*, 619 S.W.3d 434, 459 (Mo. banc 2020) (internal quotation omitted) ("Under the protections of the Fifth Amendment, an individual cannot be compelled 'to provide testimonial evidence against himself which may then be used to prosecute him.'").

had a reasonable, albeit unconfirmed assessment of the risk that were Brother called as a witness, he may have refused to testify or, worse, blame Appellant for the drugs in order to avoid a risk of further prosecution. Thus, we cannot say that Trial Counsel's decision fell below the level of skill and diligence of reasonably competent trial counsel. *See Shockley*, 579 S.W.3d at 892 (internal citation omitted).

Indeed, a trial counsel exhibits reasonable trial strategy in declining to call a potentially unreliable witness whose testimony will not assuredly aid the defense. *See State v. Johnson*, 901 S.W.2d 60, 63 (Mo. banc 1995) (finding trial counsel exercised reasonable strategy in declining to call a convicted criminal whose testimony "could have done more harm than good" because "if the jury questioned [the witness's] credibility, it also may have questioned the credibility of [the movant's] entire theory of defense"). Brother's testimony was not necessary to advance the defense strategy, and in fact could have weakened the strategy depending on what Brother actually would have said and whether he would be found credible. Thus, it is equally reasonable that Brother's testimony, one of a convicted drug offender, may have detracted from the credibility of the Appellant's defense.

The motion court expressly found Brother's deposition testimony was not credible. Our deference to the motion court's credibility determinations extends to deposition testimony. *See Symington v. State*, 638 S.W.3d 596, 599 (Mo. App. W.D. 2021) (citing *Durst v. State*, 584 S.W.3d 817, 820–21 (Mo. App. E.D. 2019) (noting "the motion court's authority to assess deposition testimony is no different from its authority to assess in-person testimony")). "In exercising its fact-finding function, the motion court [is] free to consider, evaluate, and determine the credibility of [m]ovant's evidence, ***in whatever form offered and admitted,*** and

10

this court defers to that function and those determinations." *Id.* (quoting *Durst*, 584 S.W.3d at 821).

Because Appellant did not demonstrate ineffective performance of Trial Counsel, the motion court did not err in denying Appellant's amended motion for post-conviction relief. *See* Rule 29.15(k); *Hendricks*, 519 S.W.3d at 514 (internal citation omitted). The point on appeal is denied.

<u>Conclusion</u>

The judgment of the motion court is affirmed.

 

 

Rebeca Navarro-McKelvey, J.

Thomas C. Clark, II., C.J., and
Thomas C. Albus, Sp.J., concur.